## *In re* MARCIAL'S ESTATE.

*(Surrogate's Court, Chautauqua County.  May 21, 1891.)*

1. WILLS—CONSTRUCTION—PERPETUITIES.

Testator devised to his son M. the use of 100 acres of land "until I., son of my said son M., becomes 30 years of age, and, in case of said I.'s death before arriving at the age of 30 years, then said use of said 100 acres of land continues to M. until the next oldest son of said M. arrives at the age of said 30 years, and so on until the oldest live son of said M. arrives at the age of 30 years.  Upon said I.'s arriving at the

age of 30 years, the title of said 100 acres of land is to vest absolutely in said I., or, in case of said I.'s death before arriving at the age of 30 years, then said title is to vest absolutely in said next oldest son on arriving at the age of 30 years, and so on until the oldest live son of said M. shall become invested with the title to said 100 acres of land." M. had four infant sons living at the death of testator. *Held,* that such devise violated the law against perpetuities (1 Rev. St. N. Y. p. 723, § 15) by suspending the absolute ownership of the land devised for more than two lives in being at testator's death.

**2. SAME—JURISDICTION OF SURROGATE'S COURT.**

The surrogate's court of New York has jurisdiction to construe a will of land; Code Civil Proc. N. Y. § 1866, providing that "the validity, construction, or effect * * * of a testamentary disposition of real property * * * may be determined in an action brought for that purpose. * * * But this section does not apply to a case where the question in controversy is determined by a decree of a surrogate's court, duly rendered upon allegations for the purpose, as prescribed in art. 1 of title 3 of chapter 18 of this act, (sections 2611–2646,) where the plaintiff was duly cited in the special proceeding in the surrogate's court, before the commencement of the action."

Proceedings by Martin Marcial for the probate of the will of Enoch Marcial, deceased. Counsel for both proponent and contestant requested the surrogate to construe the following clause of the will: "After all my lawful debts are paid and discharged, I give and bequeath to my son Martin Marcial the use of one hundred acres of land in said town of Mina [describing it] until Ira Marcial, son of my said son Martin Marcial, becomes thirty years of age, and, in case of said Ira's death before arriving at the age of thirty years, then said use of said 100 acres of land continues to Martin Marcial until the next oldest son of Martin Marcial arrives at the age of said thirty years, and so on until the oldest live son of said Martin Marcial arrives at the age of thirty years. Upon said Ira Marcial's arriving at the age of thirty years, the title of said one hundred acres of land is to vest absolutely in said Ira Marcial, or, in case of said Ira's death before arriving at the age of thirty years, then said title is to vest absolutely in said next oldest son on arriving at the age of thirty years, and so on until the oldest live son of said Martin Marcial shall become invested with the title to said 100 acres of land. It is understood that the use of said 100 acres of land is to be expended by the said Martin Marcial in the schooling and education of his children until the title to said 100 acres of land vests as aforesaid." Proponent was appointed executor of the will.

*Walter L. Sessions,* for proponent. *Van Dusen & Martin,* for contestants.

SHERMAN, S. I am of the opinion that the instrument produced as the last will of Enoch Marcial is utterly void, under the statute of perpetuities,[1] and the authorities cited by the learned counsel for the contestants; that it is not a valid will to pass title to real estate. It suspends the power of alienation beyond the continuance of two lives in being at the creation of the estate. It attempts to create contingent estates to at least four lives in being. The fee of the land may never vest in any of the four grandchildren, nor in any other grandson of the testator that might be born after the date of the alleged will. The four living grandchildren can convey no legal title, because they are not heirs at law, and as legatees the title might not vest in any one of them, or in any other after-born son of Martin Marcial, until after the death of four persons in being at the creation of the estate, September 11, 1889.

The important question to be considered is whether the surrogate court has jurisdiction to give construction to this instrument upon the consent and re-

---

[1] 1 Rev. St. N. Y. p. 723, § 15, provides: "The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

quest of all the parties interested.   Such request cannot give the court juris-
diction in the premises.   If it exists, it must be found in the several provis-
ions of the Code of Civil Procedure, statutes of this state, and decisions of
the courts relating thereto.   I have carefully examined these, and have come
to the conclusion that each surrogate court of this state has jurisdiction to
give construction to wills on probate, relating to both real and personal
property.   That it has such jurisdiction as to wills of personal property there
can be no doubt.   Section 2624 of the Code not only grants it, but positively
requires such courts to determine the question in making decrees in cases of
residents of the state owning personal property therein.   In most cases, wills
requiring construction on probate relate to both real and personal property,
and the questions involved are the same, and generally the value of the per-
sonal property involved largely exceeds that of the real.   The surrogate
court has undoubted jurisdiction to construe that part of wills relating to per-
sonalty, and it has been claimed that the supreme court only can in the first
instance construe parts of such wills that relate to the realty; thus necessarily
constituting two parallel lines of litigation, in two courts, under the same
will, upon the same identical questions as to construction, with the chances
that the decision of the highest court will on appeal be first rendered upon the
construction given in the surrogate court relating to the personalty.   It is not
credible that the learned codifiers of the Code of Civil Procedure, and the legis-
lature, ever intended to create such an anomaly.   On the contrary, is not the
presumption reasonable that they should have endeavored to assimilate the
practice and jurisdiction of these courts, in the important matter of probate
of wills of real and personal property, by adopting an harmonious and sym-
metrical system, avoiding unnecessary costs and delays, and so conserve the
rights of litigants?   I think that a careful examination of the history of leg-
islation on this subject shows that the latter course has been adopted by giv-
ing surrogate courts jurisdiction to construe wills of both real and personal
property, on probate, the same as has been given on settlement of estates,
and was given to the surrogate court of the county of New York by chapter
359, Laws 1870, § 11, the same as possessed by the supreme court; which act
was repealed by the provisions of the Code that went into effect September 1,
1880, and such provisions of the Code were substituted therefor.   The case
of *Marx* v. *McGlynn*, 4 Redf. Sur. 455, was decided by CALVIN, surrogate of the
county of New York, in August, 1880, a few days before sections 1866, 2622–
2629 of the Code, extending the jurisdiction of the surrogate courts on pro-
bate of wills, and recording same, went into effect, and while the act of 1870
was in full force.   The learned ex-surrogate, CALVIN, says in the above case
that his predecessors had never recognized the authority conferred by that
act, and in that case he only gave construction to that part of the will relat-
ing to personal property, and referred the parties interested to suit in the su-
preme court for their remedy as to the realty; saying that section 2624 of
the Code, giving surrogate courts jurisdiction to construe wills of personal
property on probate, might "be regarded as a legislative expression of opin-
ion that such jurisdiction should not be exercised over wills of real estate."
I have been unable to find any reported case in which the surrogate court of
New York ever gave construction to any will relating to either personal or
real property under the act of 1870, except the one above cited, during the
decade preceding September 1, 1880, when the Code went into effect.

   In construing the above sections of the Code, the first and an important one
to be considered is section 1866, which is as folllows:   "The validity, con-
struction, or effect, under the laws of the state, of a testamentary disposition
of real property situated within the state, or of an interest in such property,
which would descend to the heir of an intestate, may be determined in an ac-
tion brought for that purpose in like manner as the validity of a deed, pur-
porting to convey land, may be determined.   *   *   *   But this section does

not apply to a case where the question in controversy is determined by the decree of a surrogate's court, duly rendered upon allegations for the purpose, as prescribed in article 1 of title 3 of chapter 18 of this act, where the plaintiff was duly cited in the special proceeding in the surrogate's court before the commencement of the action." It will be noticed that this section relates only to wills of real property; and that the last sentence of the section states that such section does not apply to a case where the question in controversy, *i. e.*, relating to wills of real property, is determined by the decree of the surrogate court, duly rendered upon allegations for that purpose, as prescribed in article 1, tit. 3, c. 18, of this act, (being the sections of the Code above cited,) where the plaintiff was duly cited in the special proceeding in the surrogate court before the commencement of the action. Commissioner Throop says in his note to above section: "The provision has been expressly confined to real property within the state, and to questions arising under the laws of the state, in accordance with *Knox* v. *Jones*, 47 N. Y. 389; and it has been so framed as to avoid a conflict with various provisions of chapter 18, *post*, particularly those contained in title 3, art. 1, § 2625, *post*, whereby Laws 1870, c. 359, § 11, which authorizes the surrogate of New York to determine questions of validity, etc., has been extended to surrogates throughout the state." It will be noticed that the commissioner says that this section (1866) has been expressly confined to real property, and has been so framed as to avoid a conflict with the various provisions of chapter 18, (particularly section 2625) whereby the provisions of said act of 1870, to construe wills, etc., was extended to the surrogate's courts throughout the state, which section 2625 reads as follows: "Where the surrogate decides against the sufficiency of proof or against the validity of a will, or upon the construction, validity, or the legal effect of any provision thereof, he must make a decree accordingly; and, if required by either party, he must enter in the minutes the grounds of his decision." This section should be considered in connection with section 1866, *supra*, relating only to wills of real estate, and to which it is made to conform. Section 2622 relates to the duty of the surrogate to inquire particularly as to all the facts and circumstances relating to the genuineness of the will, and to the validity of its execution, the competency of the testator, whether under any restraint, etc., as elucidated in numerous decisions of the courts before the Code, relating only to the *factum* of the will, and not to its construction. Section 2623 is important in this connection, and reads: "If it appears to the surrogate that the will was duly executed, and that the testator at the time of executing it was in all respects competent to make a will, and not under restraint, it must be admitted to probate as a will valid to pass real property or personal property, or both, as the surrogate determines and the petition and citation require, and must be recorded accordingly. The decree admitting it to probate must state whether it was or was not contested." Section 2624 requires the surrogate to determine the question of construction of a will of personal property when put in issue, in cases where the will was made within the state by a resident of the state, and the reason given by the commissioner in his note to this section for its insertion was for the special purpose to limit the jurisdiction of surrogates' courts to construe wills of personal property to cases where the testator was a resident of the state at his death, and owning personal property within the state; citing *Despard* v. *Churchill*, 53 N. Y. 192. Section 2627 provides that "a decree admitting to probate a will of real property, as prescribed in this article, establishes presumptively only all matters determined by the surrogate pursuant to this article as against a party who was duly cited, or a person claiming from, through, or under him; or upon the trial of an action, or the hearing of a special proceeding, in which a controversy arises concerning the will." Section 2629 requires the surrogate to certify under his hand and seal of office upon every will admitted to probate before him that it has upon due proof

been admitted to probate as a will valid to pass real or personal property, or both, as the case may be. And section 2633 requires the executor to have a will of real property recorded in the office of the county clerk in every county of the state in which lands of the testator are situate, in 20 days after letters testamentary are issued to him.

It may be claimed that the statutes nowhere give such courts, in terms, direct authority to construe wills of real estate on probate. Such authority is claimed to be granted under their general authority in probating wills, in connection with the authority contained in the above sections of the Code. Neither do the statutes give to such courts, in terms, jurisdiction to construe wills of real estate on the settlement of estates; but it has been long held that such authority exists as clearly implied under their general authority to settle estates and as incident thereto. *Riggs* v. *Cragg,* 89 N. Y. 479; *Purdy* v. *Hayt,* 92 N. Y. 446; *Du Bois* v. *Brown,* 1 Dem. Sur. 317; *In re Verplanck,* 91 N. Y. 439; *In re Collyer,* 4 Dem. Sur. 24; *In re Thompson,* 5 Dem. Sur. 117, 123; sections 2473, 2481, subd. 11, and section 2482, Code. While I find *dicta* in several cases decided by the surrogates of the county of New York stating that the surrogate court has not jurisdiction to construe wills of real estate on probate, yet an examination of these cases discloses the fact that the question here involved was not material in them, such cases having been decided upon other points. In the case of *Price* v. *Foucher,* 3 Dem. Sur. 339, (decided by the learned surrogate, ROLLINS, in 1885,) the surrogate assumed that the will in question related to personal property, saying that the surrogate had no jurisdiction to make a determination respecting a testamentary disposition of real property. The decision in that case turned upon an entirely different question, being that the contingency upon which the legatee under certain statutes could take had not arisen, and that therefore the methods by which the interest of such legatee could be practically ascertained need not be considered; and the case does not show that the question here concerned was raised, considered, or examined by the learned surrogate. In *Jones* v. *Hamersley,* 4 Dem. Sur. 427, (decided by ROLLINS, surrogate, in 1886,) the will related to both real and personal property, and the surrogate was asked only to construe that part of the will relating to personal property, under section 2624 of the Code. The surrogate held that the parties asking for construction had no standing in court; that the application was not one which would be then ascertained and passed upon by the supreme court; and adds that the provision of the Code then under discussion was enacted in the place of an earlier provision. Laws 1870, c. 359, § 11, referring to section 2624. In *Re Fuller,* 5 N. Y. Supp. 46, (decided in 1889, by ABBOTT, surrogate, Kings county,) it appears that the counsel for the contestant, Luther M. Fuller, asked only for the construction of the will in respect to a personal legacy to Ella S. C. of the testatrix's "bank-book in the South Brooklyn Savings Bank, with the contents, on her twenty-first birth-day," on the ground that the bequest was contingent, and did not vest until the contingency should happen; and, if it should never happen, the legacy would lapse. In the same case the bequest to Lydia F. Brinkerhoff of personal property, in two items of $2,500 and $2,000, was discussed by Judge ABBOTT, and was not passed upon, only as postponing the same until the termination of a certain life-interest. The points presented by the counsel for the proponent did not raise the question as to the testamentary disposition of real estate; yet the learned surrogate incidentally referred to the fourth paragraph of the answer as relating to real property by saying: "The fourth paragraph of the answer refers to a disposition of real property which the surrogate has no jurisdiction to construe under section 2624 of the Code,"—a proposition too patent to be denied. In *Re Ellis,* 4 N. Y. Supp. 180, the only question raised or discussed related to the proposition to ask for a construction of the will on petition for revocation under section 2647 of the Code; the learned surrogate (RANSOM)

holding that such question could only be raised on probate, and not on peti-tion for revocation of probate.    The case of *In re Look*, 5 N. Y. Supp. 50, .appears to be like this in all essential particulars, and the parties interested .asked the surrogate to give construction to the will, which related to both real .and personal property.    The testatrix died in 1888, seised of the title in fee to .land in Chautauqua county valued at $400, and personal property appraised at $5,000, and leaving, her surviving, 25 heirs at law, who contested the will. After bequeathing $500 in two legacies, by the third  paragraph of her will :she gave and devised all the residue of her property, real and personal, to the American Bible Society formed in New York  in the year 1816, to be used by said society for the promulgation of the Holy Bible.    The contestants, heirs .at law of the decedent, asked the surrogate to give construction  to such re-siduary clause, and adjudge the same void.    It clearly appeared that such devise included said real estate, as the testatrix owed no debts of any amount, .and the surrogate made his decree holding the devise valid.    If he had held it void, the title to the land would have vested in the contestants.    The sur-rogate's decree was confirmed by the general term, fifth department, (7 N. Y. Supp. 298,) and has since been affirmed by the court of appeals.    I direct ·decree holding that the surrogate court has jurisdiction to give judicial con-·struction to the will in question on probate, and adjudging  same void, and ·denying probate thereof, without costs to  either party.